UNITED LABORATORIES, INC., a Delaware Corporation v. WILLIAM DOUG-
LAS KUYKENDALL, and SHARE CORPORATION, a Wisconsin Corpora-
tion

No. 598A87

(Filed 28 July 1988)

1. **Master and Servant § 11.1; Contracts § 7.1— sales representative—noncompetition agreement—valid and enforceable**

A noncompetition clause in a sales representative agreement was valid and enforceable where the sales representative testified that at the time he joined defendant Share Corporation he was familiar with the products plaintiff had and the prices at which they sold; that when he called upon his former accounts, he knew the requirements of that customer, who was buying what product and who liked the different types of products; and that he made efforts to determine which Share Products were comparable to United Products and then told his United accounts that the Share products were comparable to the products which they had been purchasing through him from United.

2. **Master and Servant § 11.1; Contracts § 7.1— sales representative—covenant not to compete—Illinois law**

Plaintiff had a legitimate business interest in need of protection under Illinois law based on plaintiff's near permanent relationship with its customers and defendant Kuykendall's acquisition of confidential information concerning plaintiff's customers' buying habits that, but for his employment, he would not have had.

3. **Master and Servant § 11.1; Contracts § 7.1— noncompetition agreement—salesman—territorial and time restrictions—reasonable**

A territorial restriction in a noncompetition clause was reasonable under Illinois law where defendant had been a sales manager for plaintiff and had thus gained knowledge concerning customer service by other sales representatives working in the same territory and of plaintiff's business operations. An eighteen-month time restriction was also reasonable under Illinois law despite plaintiff's policy allowing its other sales representatives to contact the exclusive customers of sales representatives who failed to make a sale to those customers within nine months, because defendant was no longer an employee of plaintiff and was not in a position to enjoy the same advantages as plaintiff's employees; moreover, the agreement was entered into willingly with the expectations of reaping the benefits of a profit-sharing fund.

4. **Contracts § 34— tortious interference with contract—directed verdict for plaintiff improper**

The trial court erred by granting plaintiff's motion for a directed verdict on a tortious interference with contract claim, and the Court of Appeals erred by remanding the case for entry of directed verdict in defendants' favor, where, while the jury could reasonably infer from the evidence presented that defendant Share intentionally induced Kuykendall to breach non-competition

covenants for a purpose other than as a reasonable and bona fide attempt to protect the interests of Share, it likewise could infer that defendant Kuykendall breached the covenants without any encouragement or direction from defendant Share.

**5. Unfair Competition § 1— non-competition agreement—unfair trade practices— remanded for new trial**

An unfair trade practices claim based on violations of the covenant not to compete and other actions was remanded for trial where the record was inadequate to determine whether plaintiff's evidence was sufficient concerning defendants' acts unrelated to the covenants not to compete and the unfair trade practices issue concerning the covenants not to compete was not submitted to the jury. Furthermore, the contention was rejected that N.C.G.S. § 75-1.1 should be limited to actions involving consumers or businesses involved in fraudulent advertising or a buyer-seller relationship.

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 87 N.C. App. 296, 361 S.E. 2d 292 (1987), reversing judgments entered by *Fountain, J.*, on 25 June 1986, in Superior Court, BUNCOMBE County. Heard in the Supreme Court 11 April 1988.

*Petree, Stockton & Robinson, by Jackson N. Steele; and Simon & Welnhofer, by Paul G. Simon, for plaintiff-appellant.*

*Fox, Carpenter, O'Neill & Shannon, S.C., by Bruce C. O'Neill; and Brock & Drye, P.A., by Michael W. Drye, for defendants-appellees.*

FRYE, Justice.

This appeal involves issues concerning non-competition clauses, tortious interference with contract, and unfair trade practices. These issues are before us on the basis of a dissenting opinion filed in the Court of Appeals. N.C.R. App. P., Rule 16(b) (1988).

Plaintiff, United Laboratories, Inc. (United), is in the business of manufacturing and selling specialty chemical products through a nationwide system of sales representatives. Its home office is in Addison, Illinois. Sales representatives are assigned to a specific geographical territory either on an exclusive or open basis. If a sales representative has been assigned a county on an exclusive basis, no other sales representative of United may call upon customers located in that particular county. The "open" counties designation is typically reserved for counties containing larger

cities and industrial output where more sales representatives are needed to penetrate the account potential. However, in these "open" counties, once an account has been opened and a commission paid to a particular sales representative, that account is registered to that particular sales representative and no other sales representative of United may call upon that particular customer.

Defendant Kuykendall first started as a sales representative with United in 1971 in North Carolina. United provided start-up training for Kuykendall and also provided continuing supplemental training in technical support and customer services to develop his ability to secure and maintain long-standing personal relationships with customers of United. In 1979, Kuykendall terminated his employment with United and went to work as a sales representative for one of United's competitors, working the same territory he had covered for United. However, after being advised by United that he was breaching a non-competition clause by working the same territory for his new employer that he had worked while employed with United, Kuykendall rejoined United in 1979 as a sales manager.

In 1982, Kuykendall transferred from this managerial position to once again become a sales representative for United. Upon returning to sales, Kuykendall signed the standard United Sales Representative Agreement, which contained a non-competition clause. This agreement specifically precluded Kuykendall, for eighteen months following the termination of his employment with United, from calling upon accounts which he serviced while employed by United. The parties agreed that this agreement was to be governed by North Carolina law.

In 1983, Kuykendall enrolled in United's voluntary profit-sharing pension plan and signed a Supplementary Compensation Agreement under which he gained rights to additional revenues based upon the profits of United. This agreement contained a non-competition clause similar to the 1982 agreement, but the restrictions were more broad. The 1983 agreement contained a territory restriction that precluded Kuykendall from calling upon any actual or potential United customers located within the same territory to which he was assigned at the time he terminated his employment with United. As in the 1982 agreement, the time re-

straint was for the eighteen-month period following Kuykendall's employment termination with United. This 1983 agreement was to be governed by Illinois law.

During September, 1985, Kuykendall resigned from United and went to work as a sales representative for defendant Share Corporation (Share), a competitor of United. When Kuykendall resigned from United, the vice-president of sales for United sent Kuykendall a letter reminding him of the restrictions in the Sales Representative Agreement. As a sales representative for Share, defendant Kuykendall called upon the same customers he had called upon while employed at United. Upon discovering that Kuykendall was servicing the same customers he had serviced while employed by United, United's general counsel notified both Kuykendall and Share that this was a breach of Kuykendall's Sales Representative Agreement.

Because defendants continued servicing plaintiff's accounts, plaintiff filed suit on 26 November 1985 in the Superior Court for Buncombe County. Plaintiff sought preliminary and permanent injunctive relief, together with monetary damages, on the basis that defendant Kuykendall breached both the 1982 Sales Representative Agreement and the 1983 Supplementary Compensation Agreement. Plaintiff sought also injunctive and monetary relief against Share, alleging that Share tortiously interfered with the 1982 and 1983 agreements and other business relationships of United, and also violated the North Carolina Unfair Trade Practices Act.

A hearing was held on 11 December 1985 and Judge Charles Lamm, Jr., entered a preliminary injunction on 31 December 1985, enjoining Kuykendall from contacting any United customers he had solicited while employed by United. On 19 May 1986, Judge Forrest Ferrell denied defendants' motion to dissolve the preliminary injunction.

The case was tried before a jury 23 June through 25 June 1986. At the conclusion of all the evidence, the trial court first determined that the 1982 Sales Representative Agreement was superseded by the 1983 Supplementary Compensation Agreement. The court then granted plaintiff's motions for directed verdicts against defendants on matters of liability for breach of the 1983 agreement, for tortious interference with contract, and for

violations of the North Carolina Unfair Trade Practices Act. The court then submitted the question of damages to the jury and a verdict was returned for $77,477.77. The jury also made a finding that plaintiff had incurred attorneys' fees and costs in the amount of $47,522.23. The court, believing that the jury erroneously assessed damages for an eighteen-month period rather than for the nine-month period that had elapsed between the time of the breach and the time of the trial, reduced the actual damages from $77,477.77 to $38,738.89. This amount was trebled as a result of the court's finding of liability pursuant to the North Carolina Unfair Trade Practices Act. Judgment was also entered in the amount of $47,522.23 for attorneys' fees and costs. The court then entered a permanent injunction against defendant Kuykendall enjoining him from selling Share products for the remaining portion of the eighteen-month time restriction within the territory in which he was formerly assigned while employed by United. Furthermore, Kuykendall was enjoined from disclosing, and Share was enjoined from utilizing, any confidential information concerning United's business practices and United's customers.

Defendants appealed the trial court's decision to the Court of Appeals. The Court of Appeals first held that the trial court erred in finding that the 1982 agreement was superseded by the 1983 agreement. It then reversed the directed verdict for plaintiff and ordered a directed verdict in favor of defendants, holding that the restrictions contained in the 1982 Sales Representative Agreement and the 1983 Supplementary Compensation Agreement were unenforceable under North Carolina and Illinois law, respectively. The Court of Appeals also found that without enforceable restrictions in the employment contracts, the contracts were terminable at will and Share could not be liable for tortious interference with contract. The Court of Appeals then reversed the trial court's entry of directed verdict for plaintiff concerning the alleged violations by Kuykendall and Share of the North Carolina Unfair Trade Practices Act. The case was remanded for a new trial on this issue.

In his dissent to the majority opinion of the Court of Appeals, Judge Phillips agreed with the majority that the trial court erred in finding that the 1983 Supplementary Compensation Agreement superseded the 1982 Sales Representative Agreement. On the remaining issues, however, Judge Phillips stated

that he would hold the 1982 and the 1983 agreements to be valid and enforceable. Moreover, Judge Phillips stated that the trial court's judgment should be upheld as to the claim of tortious interference with contract by Share with the contractual relations between Kuykendall and United, and would find also that the actions of defendants violated the North Carolina Unfair Trade Practices Act.

On the basis of Judge Phillips' dissent, plaintiff appealed to this Court.[1]

## Enforceability of 1982 Sales Representative Agreement

[1] Plaintiff first contends that the Court of Appeals erred in holding that the non-competition clause in the 1982 Sales Representative Agreement is unenforceable under North Carolina law. We agree with plaintiff and reverse the Court of Appeals.

At common law, non-competition clauses generally were not upheld because such agreements were held to be in restraint of trade and thus against public policy. *See Mar-Hof Co. v. Rosenbacker*, 176 N.C. 330, 97 S.E. 169 (1918). However, this position was modified and it became generally recognized that, while non-competition clauses were in partial restraint of trade, they would nevertheless be upheld if the covenants were supported by valuable consideration, reasonably necessary to protect the interests of the covenantee, and not against public policy. *Hill v. Davenport*, 195 N.C. 271, 141 S.E. 752 (1928). Prior to 1929, the parties to these contracts were usually a buyer and seller of a business. *See Sea Food Co. v. Way*, 169 N.C. 767, 86 S.E. 603 (1915) (defendant enjoined from engaging in fish dealer business); *Anders v. Gardner*, 151 N.C. 581, 66 S.E. 665 (1910) (defendant restrained from engaging in livery stable business); *King v. Fountain*, 126 N.C. 114, 35 S.E. 427 (1900) (defendant precluded from owning a livery stable business); *Cowan v. Fairbrother*, 118 N.C. 253, 24 S.E. 212

---

1. In their brief filed with this Court, defendants contend that the Court of Appeals erred in holding that the trial court erroneously found that the 1983 agreement superseded the 1982 agreement. However, the majority and the dissenting opinions of the Court of Appeals are in agreement that the trial court did err. Because of this unanimity and because defendants have not filed a petition for discretionary review in this Court, we do not address defendants' contention concerning this issue.

(1896) (defendant enjoined from owning a newspaper business); *Baumgarten v. Broadway*, 77 N.C. 22 (1877) (defendant precluded from engaging in photography business). As long as the time limit and territory restrictions were reasonable, these covenants, designed for the reasonable protection of the vendee, were generally upheld. *See Faust v. Rohr*, 166 N.C. 187, 81 S.E. 1096 (1914).

The same principle underlying this Court's sustaining the enforceability of restrictive covenants that preclude a seller of a business from competing with the new owner was subsequently extended to the employer-employee situation. *See Scott v. Gillis*, 197 N.C. 223, 148 S.E. 315 (1929). Whether the covenantor is a former owner or a former employee, intimate knowledge of the business operations or personal association with customers provides an opportunity to either the former employee or the former owner to injure the business of the covenantee. *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154 (1930). A non-competition agreement, therefore, is a device used by the covenantee to prevent the covenantor from utilizing this opportunity to do injury. *Id.*

Moreover, a further consideration by this Court, in recognizing the validity of these covenants, is that at the time of entering these contracts containing covenants not to compete both parties apparently regarded the restrictions as reasonable and desirable. *Sonotone Corp. v. Baldwin*, 227 N.C. 387, 42 S.E. 2d 352 (1947). Essentially, "by enforcing the restrictions [a] court is only requiring the defendants to do what they agreed to do." *Asheville Associates v. Miller and Asheville Associates v. Berman*, 255 N.C. 400, 404, 121 S.E. 2d 593, 595 (1981). "While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests. It is as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." *Sonotone Corp. v. Baldwin*, 227 N.C. 387, 390, 42 S.E. 2d 352, 355.

Today, in North Carolina, restrictive covenants between an employer and employee are valid and enforceable if they are (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and ter-

ritory; and (5) not against public policy. *See A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E. 2d 754 (1983).

Defendants contend that the 1982 agreement is not designed to protect a legitimate business interest and for that reason is against public policy. In holding that the restrictions in the 1982 agreement were unenforceable, the Court of Appeals promulgated the following rule:

Before a covenant can be found reasonably necessary for the protection of a legitimate business interest, we hold that it is first necessary to find the employee, as a result of his employment, acquired intimate knowledge of the nature and character of the business which was not otherwise generally available to the public.

*United Laboratories, Inc. v. Kuykendall*, 87 N.C. App. 296, 306, 361 S.E. 2d 292, 298.

While this is an accurate statement of the law, as far as it is stated, the opinion of the Court of Appeals is subject to the interpretation that the information obtained must be of a confidential nature and that this is the only basis for finding a legitimate protectable interest. However, there are two separate and distinct legitimate bases for enforcing restrictive covenants in the employer-employee relationship:

The general rule with respect to enforceable restrictions is stated in 9 A.L.R. 1468: "It is clear that if the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, *or* enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons and customers of his former employer, and thereby gain an unfair advantage, equity will interpose in behalf of the employer and restrain the breach . . . providing the covenant does not offend against the rule that as to time . . . or as to the territory it embraces it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer."

*A.E.P. Industries v. McClure*, 308 N.C. 393, 408, 302 S.E. 2d 754, 763 (emphasis added) (quoting *Asheville Associates v. Miller and Asheville Associates v. Berman*, 255 N.C. 400, 403, 121 S.E. 2d 593, 595).

The narrow holding of the Court of Appeals effectively eliminates consideration of an employer's good will and customer relationships as a basis for enforcement of post-termination restrictions. However, protection of customer relationships and goodwill against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer. *See* generally Annot. "Employee — Restrictive Covenant — Area," 43 A.L.R. 2d 94, § 24 (1955) and Annot. "Employee — Restrictive Covenant — Time," 41 A.L.R. 2d 15, § 14 (1955). The greater the employee's opportunity to engage in personal contact with the employer's customer, the greater the need for the employer to protect these customer relationships. Annot. "Employee — Restrictive Covenant — Time," 41 A.L.R. 2d 15, § 15. This theory, which is often referred to as the "customer contact" theory, is most applicable where the employee is the sole or primary contact between the customer and the employer. *See* Blake, *Post Employment Restraints*, 73 Harv. L. Rev. 625, 657 (1960).

Furthermore, the "customer contact" theory is well recognized under North Carolina law. *See A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E. 2d 754; *Asheville Associates v. Miller and Asheville Associates v. Berman*, 255 N.C. 400, 121 S.E. 2d 593. Indeed, the Court of Appeals, while not labeling it as such, relied on this theory in upholding a non-competition agreement involving a janitorial supply salesman. *See Wilman, Inc. v. Corsillo*, 24 N.C. App. 271, 210 S.E. 2d 427, *cert. denied*, 286 N.C. 421, 211 S.E. 2d 802 (1975). In *Wilman*, the restrictive covenant specifically noted that the defendant salesman would, through personal contact with plaintiff's customers, "establish business good will which is a valuable asset of [plaintiff]," and that the salesman would become "familiar with the price lists, catalogs, methods of pricing, needs and requirements of customers and methods of operation of [plaintiff]," all of which would place defendant "in an unfair competitive position as to [plaintiff] in the event that [defendant's] employment should for any reason be terminated and he should go into competition with [plaintiff]." *Wilmar*, 24 N.C. App. at 274, 210 S.E. 2d at 430. The Court of Appeals held that this covenant was

valid, stating that it "seeks to protect a legitimate business interest of plaintiff and is reasonable to the parties and the public." *Id.*

In the case *sub judice*, the Court of Appeals first acknowledged that defendant Kuykendall had "knowledge about the buying habits of [plaintiff's] customers, the cyclical nature of their ordering, and the special needs of the customers." *United Laboratories v. Kuykendall*, 87 N.C. App. 296, 307, 361 S.E. 2d 292, 299. However, the Court of Appeals then stated that this information was not acquired because of Kuykendall's association with plaintiff but "rather through his own efforts on plaintiff's behalf." *Id.* Furthermore, although having conceded that defendant Kuykendall had knowledge concerning customer requirements, the Court of Appeals then stated that "Kuykendall acquired no intimate knowledge as to the nature and character of plaintiff's business which was not otherwise generally available to the public at large." *Id.*

First, we disagree with the implication that information obtained through a salesman's efforts during the course of employment belongs to the employee. An acceptance of this premise would undermine the law of agency:

> Under traditional agency concepts, any new business or improvement in customer relations attributable to [the employee] during his employment is for the sole benefit of the principal. This is what he is being paid to do. When he leaves the company he should no more be permitted to try to divert to his own benefit the product of his employment than to abscond with the company's cashbox.

Blake, *Post Employment Restraints*, 73 Harv. L. Rev. 625, 654 (1960).

When an employee, during the course of his or her employment, develops or improves customer relationships, the employee is establishing business goodwill, which is a valuable asset of the *employer,* a principle that this Court has implicitly and explicitly endorsed. *See A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E. 2d 754; *Greene Co. v. Arnold*, 266 N.C. 85, 145 S.E. 2d 304 (1965); *Asheville Associates, Inc. v. Miller and Asheville Associates v. Berman*, 255 N.C. 400, 121 S.E. 2d 593; *Welcome Wagon*

*International, Inc. v. Pender*, 255 N.C. 244, 120 S.E. 2d 739 (1961); *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154; *Scott v. Gillis*, 197 N.C. 223, 148 S.E. 315. Prior to the case *sub judice*, the Court of Appeals also recognized this principle. *See Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 320 S.E. 2d 693 (1984); *Manpower, Inc. v. Hedgecock*, 42 N.C. App. 515, 257 S.E. 2d 109 (1979); *Wilmar, Inc. v. Corsillo*, 24 N.C. App. 271, 210 S.E. 2d 427.

Second, we disagree with the Court of Appeals' conclusion that defendant "Kuykendall acquired no intimate knowledge as to the nature and character of plaintiff's business which was not otherwise generally available to the public at large." *United Laboratories, Inc. v. Kuykendall*, 87 N.C. App. 296, 307, 361 S.E. 2d 292, 299. As noted by the Court of Appeals, Kuykendall had "knowledge about the buying habits of the customers, the cyclical nature of their ordering, and the special needs of the customers." *Id.* Moreover, the evidence shows that this specific information concerning particular customers of plaintiff's was not generally available to the public. Indeed, Kuykendall testified that at the time he joined Share, he was familiar with the products plaintiff had and the prices at which they sold; that when he called upon the former United accounts he knew the requirements of that customer, who was buying what product, and who liked the different types of products. Kuykendall further testified that he made efforts to determine which Share products were comparable to United products and then told his United accounts that the Share products were comparable to the products which they had been purchasing through defendant Kuykendall from United. This detailed knowledge of the buyer's needs and buying history, coupled with the close personal relationship developed between Kuykendall and the customer, naturally enabled Kuykendall to readily procure sales for defendant Share from the former customers of his previous employer. Moreover, Kuykendall's testimony reveals that although names of *potential* customers may easily be ascertained from public documents, information concerning particular customers and their specific needs and buying habits was intimate knowledge, obtainable only because of Kuykendall's employment with plaintiff.

We hold, therefore, that the 1982 contract was valid and enforceable under North Carolina law and accordingly reverse the Court of Appeals on this issue.

Enforceability of 1983 Supplementary Compensation Agreement

**[2]** Plaintiff next contends that the Court of Appeals erred in holding that the 1983 contract was unenforceable under Illinois law. We agree with plaintiff and reverse the Court of Appeals.

In Illinois, whether covenants not to compete are enforceable is a question of law for the courts. *See The Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 480 N.E. 2d 1273 (1985). Because these restrictive covenants partially restrain trade, they are scrutinized carefully by the courts to ensure that "their intended effect is not the prevention of competition *per se*." *Id.* at 891, 480 N.E. 2d at 1279. In determining whether non-competition covenants are enforceable, the courts consider whether the employee has received benefits in exchange for his agreement not to compete with his employer upon termination of employment, whether the time and territory restrictions are reasonable, and the effect these covenants have upon the parties and the public. *Id.* The question becomes "whether the covenant is reasonably necessary to protect the employer from improper or unfair competition." *Id.*

The general rule in Illinois is that an employer has no proprietary interest in his customers. *See The Packaging House, Inc. v. Hoffman*, 114 Ill. App. 3d 284, 448 N.E. 2d 947 (1983). However, there are two situations in which this general rule is inapplicable:

(1) where the former employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit, and

(2) where, by nature of the business, the customer relationship is near-permanent and, but for his association with plaintiff, [the employee] would not have had contact with the customers in question.

*The Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 892, 480 N.E. 2d 1273, 1279.

In the first situation, in which by the nature of his employment an employee has acquired confidential information concerning an employer's business operations or customer requirements, Illinois courts have not hesitated to find that the employer has a protectable business interest. *See Donald McElroy, Inc. v. Delan-*

*ey*, 72 Ill. App. 3d 285, 389 N.E. 2d 1300 (1979); *Wessel Co. v. Busa*, 28 Ill. App. 3d 686, 329 N.E. 2d 414 (1975). Illinois recognizes the fact that an employee, having such confidential information, is in a position to misappropriate and misuse this information upon employment termination to convert his former employer's business to his own—the precise situation that the employer sought to avoid when it entered into the covenant with the employee. *See Smithereen Co. v. Renfroe*, 325 Ill. App. 229, 59 N.E. 2d 545 (1945).

In the second situation, the employer has a protectable business interest in its customers if these customers were long-standing, near-permanent customers with whom the employee had, over many years of employment, developed a closeness and goodwill, and but for the employee's association with his employer, the employee would not have had contact with these customers. *Morrison Metalweld Process Corp. v. Valent*, 97 Ill. App. 3d 373, 422 N.E. 2d 1034 (1981). The Illinois courts recognize that because of this personal contact with customers who have continuously dealt with a business through an employee over a long period of time, the employee, upon employment termination, could successfully solicit his former employer's customers for his own. *See The Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 480 N.E. 2d 1273. Moreover, it is not necessary that an employer's customers deal with him exclusively in order for that employer to show that his customers are near-permanent. *Id.*

On appeal to the Court of Appeals, defendants contended that the trial court erred in upholding the 1983 covenant and argued that plaintiff failed to establish the existence of a legitimate business interest in need of protection by a covenant. In the alternative, even if there is a protectable business interest, defendants contended that the time and territory restrictions are not reasonable. The Court of Appeals agreed with defendants that plaintiff does not have a legitimate protectable business interest, and, therefore, did not reach the question concerning the reasonableness of the time and territory restrictions.

The Court of Appeals, in determining whether plaintiff has a legitimate business interest protectable by the agreement, recognized the two situations in which a legitimate business interest arises under Illinois law in the employer-employee relationship. It

held, however, that plaintiff failed to show a legitimate protectable business interest. First, the Court of Appeals held that the evidence showed that plaintiff did not enjoy a near-permanent relationship with its customers since these customers would buy from more than one chemical company at the same time, that the chemical industry was highly competitive, and that a sales representative for any chemical company could easily determine the names of potential customers from telephone directories. Second, the Court of Appeals held that there was no evidence that defendant Kuykendall acquired any information during his employment that would qualify as trade secrets or confidential information in need of protection since information concerning the customers was neither a trade secret nor confidential in that the customer list could easily be duplicated by reference to telephone directories or trade publications.

We disagree with the Court of Appeals' holding that under Illinois law plaintiff has failed to show a legitimate protectable business interest. Whether customers buy from more than one company is not the determining factor in deciding whether a company has a near-permanent relationship with its customers. Instead, the court must determine whether the evidence shows that the employer has had a long-term, continuous relationship with its customers. In the case *sub judice*, Kuykendall's own testimony revealed that most of the customers he serviced, after leaving plaintiff's employment, were customers who had bought from him continuously for many years. Thus, the evidence shows that these customers were not transitory, but were near-permanent customers.

In reaching its decision that plaintiff failed to show a protectable business interest in its customers, the Court of Appeals relied exclusively on *Reinhardt Printing Co. v. Feld*, 142 Ill. App. 3d 9, 490 N.E. 2d 1302 (1986), in which the court held the restrictive covenants unenforceable because plaintiff-employer failed to establish a protectable business interest in its customers. However, we find that case distinguishable on several grounds. First, the evidence in *Reinhardt* shows that defendant-employee had worked for plaintiff for only two years and the majority of customers serviced by defendant were not regular customers of plaintiff prior to that two-year period. Thus, it is apparent that plaintiff did not enjoy a long-term continuous relationship with these cus-

tomers. Second, the evidence in *Reinhardt* showed that defendant, through her former job, had prior contact and business association with many of the customers she subsequently solicited for plaintiff. Finally, because plaintiff, in its advertising brochure, named forty of its customers, the customer list was not confidential.

In the case *sub judice*, defendant worked for plaintiff for approximately fourteen years, and the evidence shows that plaintiff enjoyed a long-term, continuous relationship with its customers. Second, there is no evidence that defendant had any prior contact or business association with these customers before becoming an employee of plaintiff. Finally, there is no evidence that the names of plaintiff's customers were generally known in the industry. Thus, the instant case is not controlled by *Reinhardt*.

We also disagree with the Court of Appeals' conclusion that Kuykendall did not acquire any confidential information while employed by plaintiff. The evidence shows that through his employment, Kuykendall acquired and accumulated information concerning the historical buying habits of the customers, i.e., the requirements of each customer, the cyclical nature of their buying habits, the prices each was willing to pay, and any specialized product formulations. It is this information that was not generally available to plaintiff's competitors. Indeed, the evidence shows that it was this precise information that enabled Kuykendall to readily procure sales for defendant Share Corporation upon leaving the employment of plaintiff.

We hold, therefore, that plaintiff did have a near-permanent relationship with its customers and that defendant Kuykendall acquired confidential information concerning plaintiff's customers that, but for his employment, he would not have acquired. Thus, under Illinois law, plaintiff has a legitimate business interest in need of protection. Accordingly, we reverse the Court of Appeals on this issue.

[3] Because the Court of Appeals decided that the 1983 contract was unenforceable on the basis that plaintiff failed to show it had a protectable business interest, it was not necessary for that court to determine whether the time and territory restrictions were reasonable. On appeal to this Court, defendants press their

contentions that the time and territory restrictions were overly broad and thus unreasonable.

In Illinois, in determining whether the time and territory restrictions are reasonable, the court must measure the effect, if any, these restrictions have "on the general public, the extent of the hardship imposed thereby on the restricted party and whether they are necessary to protect a legitimate business interest of the former employer." The *Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E. 2d 1273, 1281. If the business of the former employer is highly competitive, i.e., there are other companies from which the public may purchase the merchandise, then the public will not be injured if the restrictions are enforced. *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045, 1057, 486 N.E. 2d 1306, 1314-15 (1985). A restriction prohibiting a former employee from soliciting customers of his former employer will be upheld if it is "reasonably related to the employer's interest in protecting the customer relations that its employees developed as a direct result of the employment." *Id.* at 1057, 486 N.E. 2d at 1315.

With respect to the reasonableness of the territorial restrictions, Illinois courts look to see if the restrictive territory is one in which the employer is doing business and the "purpose of the restriction was to protect him from losing customers to a former employee who, by virtue of his employment, gained special knowledge and familiarity with the customer's requirements." The *Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E. 2d 1273, 1281. However, Illinois courts are hesitant in enforcing territorial restrictions that preclude former employees from servicing customers "they never solicited or had contact with" under their former employment. *Id.* Therefore, if the territorial restrictions merely preclude the former employee from soliciting customers he solicited or had contact with during the former employment, then there is no undue hardship on the employee, since he is not prohibited from practicing his trade.

With regard to the time limitation, Illinois courts have held as reasonable time restrictions of two to three years when the employee has maintained personal contact with the customers. *See The Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884,

480 N.E. 2d 1273; *Donald McElroy, Inc. v. Delaney*, 72 Ill. App. 3d 285, 389 N.E. 2d 1300.

In the case *sub judice*, the 1983 agreement contains a territory-wide restriction that precludes Kuykendall from calling upon any actual or prospective United customers within the territory he was assigned at the time his employment with plaintiff was terminated. This restriction was to last a period of eighteen months from the time he terminated his employment with plaintiff. At the end of the trial, the trial court entered a permanent injunction enjoining defendant Kuykendall from working in the assigned territory he had at the time he terminated his employment with plaintiff. However, the time span of the permanent injunction was limited to nine months from the end of the trial because half of the eighteen-month period called for in the covenant had elapsed.

On appeal to this Court, defendants contend that the time restriction of eighteen months was too long in light of plaintiff's established policy which allows its other sales representatives to solicit an exclusive customer if the assigned sales representative fails to make a sale to this customer within nine months. Concerning the territorial restriction, defendants contend it is over-broad since the evidence shows that Kuykendall serviced only 189 accounts in a territory with thousands of potential customers.

We do not find persuasive defendants' argument that because plaintiff allows its other sales representatives to contact the exclusive customers of a sales representative who has failed to make a sale to these customers within nine months, that this makes the eighteen-month time restriction unreasonable. First, defendant Kuykendall willingly entered into this supplemental agreement with expectations of reaping the benefits of a profit-sharing pension fund. Second, defendants place Kuykendall on the same level as plaintiff's employees, a position he no longer enjoys. Defendants appear to argue that Kuykendall should have the same advantage as plaintiff's employees. However, this is the very benefit Kuykendall agreed to forego upon termination of his employment. We believe that the Illinois appellate courts would find the eighteen-month restriction to be reasonable. *See The Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 480 N.E. 2d 1273 (two years held reasonable); *Donald McElroy, Inc. v. De-*

*laney,* 72 Ill. App. 3d 285, 389 N.E. 2d 1300 (three years held reasonable). We hold that the time restriction of eighteen months was reasonable.

Regarding whether the territorial restrictions are overbroad, the evidence shows that plaintiff was seeking to protect itself from losing customers to its former employee who, by virtue of his employment, had gained intimate knowledge concerning the requirements of plaintiff's customers whom he had serviced. Moreover, for a period of years Kuykendall was a sales manager for United, a position which enabled him to obtain intimate knowledge, not only of the business operations of plaintiff, but also knowledge concerning customers serviced by other sales representatives of United working in the same territory. Under these circumstances, the territory restrictions precluding Kuykendall from soliciting any customers in the territory he was assigned at the time of employment termination would be reasonable under Illinois law.

Because we find the time and territory restrictions reasonable, and because plaintiff had a legitimate business interest protectable by the restrictive covenant, we hold that the 1983 agreement was enforceable. Because the evidence is manifest that defendant Kuykendall breached the 1983 agreement we hold that the trial court properly granted plaintiff's motion for ₍directed verdict against defendant Kuykendall on this issue.

## Tortious Interference With Contract

[4] Plaintiff next contends that the Court of Appeals erred in holding that defendant Share's actions did not constitute a tortious interference with contract. Although for different reasons, we agree with the Court of Appeals that the trial court erred in granting plaintiff's motion for directed verdict on this issue. However, we also find that the Court of Appeals erred in remanding the case for entry of a directed verdict for defendant Share.

In its complaint in this cause of action, plaintiff alleged that defendant Share intentionally and maliciously interfered with the agreement between Kuykendall and plaintiff. The uncontradicted evidence at trial reveals that upon hiring Kuykendall, defendant Share was aware that a non-competition covenant existed between plaintiff and Kuykendall; that Share had agreed to pay all

legal costs, if any, Kuykendall would incur by coming to work for Share; and that Share was aware that during the time Kuykendall solicited orders for Share, he was soliciting these orders from customers of United. The evidence reveals further that once Kuykendall was ordered by the court to abide by the preliminary injunction, the vice-president of Share used information supplied by Kuykendall to continue to solicit orders from United customers. At the close of all the evidence, the trial court granted plaintiff's motion for a directed verdict on the issue of whether defendant Share tortiously interfered with the covenant not to compete between Kuykendall and United.

On appeal to the Court of Appeals, defendant Share contended that the trial court erred in directing a verdict for plaintiff. In agreeing with defendant Share, the Court of Appeals first held that violation of the non-competition covenants could not be the basis of recovery because the covenants were unenforceable. Next, the Court of Appeals held that because this was an employment-at-will situation and because the parties were engaged in a competitive business of selling cleaning chemicals, defendant Share's actions could not constitute a tortious interference with contract. The Court of Appeals then remanded the case for entry of a directed verdict for defendant Share.

The tort of interference with contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *Childress v. Abeles*, 240 N.C. 67, 84 S.E. 2d 176 (1954).

Upon a motion for a directed verdict, pursuant to N.C.G.S. § 1A-1, Rule 50 (1983), the evidence must be considered in the light most favorable to the non-moving party, resolving all conflicts in his favor, and giving him the benefit of all reasonable inferences flowing from the evidence in his favor. *West v. Slick*, 313 N.C. 33, 326 S.E. 2d 601 (1985). The question presented by a motion for a directed verdict is whether the evidence is sufficient to entitle the non-movant to have a jury decide the issue in question. *Financial Corp. v. Harnett Transfer*, 51 N.C. App. 1, 275 S.E. 2d

243, *cert. denied*, 302 N.C. 629, 280 S.E. 2d 441 (1981). Moreover, if there is conflicting testimony that permits different inferences, one of which is favorable to the non-moving party, a directed verdict in favor of the party with the burden of proof is improper. *See Murdock v. Ratliff; Connor Homes v. Ratliff; Ratliff v. Moss*, 310 N.C. 652, 314 S.E. 2d 518 (1984).

This Court, in a recent decision, addressed the issue of tortious interference with contract and held that in some situations a competitor may hire an employer's former employees without being liable for tortious interference with contract. *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 367 S.E. 2d 647 (1988). In *Hooks*, plaintiff's employees had terminable at will contracts with plaintiff, had signed covenants not to compete, and subsequently went to work for one of plaintiff's competitors. This Court held that hiring the competitor's former employees and assigning them to the same territory they had worked in their prior employment was not a tortious interference with contract. We held in *Hooks* that a claim for tortious interference with contract would not lie where a defendant had only "offered the plaintiff's employees job opportunities which induced them to terminate their terminable at will contracts and, by locating these employees in their previously assigned territories, induced them to breach the non-competition clauses contained in their contracts with the plaintiff." 322 N.C. at 221, 367 S.E. 2d at 650. We concluded that the fact that the plaintiff and defendant were in competition was sufficient to justify the defendant "in offering the plaintiff's employees new jobs and locating them in their previously assigned territory." *Id.* In *Hooks*, however, we also emphasized that " '[t]he privilege [to interfere] is conditional or qualified; that is it is lost if exercised for a wrong purpose. In general a wrong purpose exists where the act is done other than as a reasonable and *bonafide* attempt to protect the interests of the defendant which is involved.' " *Id.* at 220, 367 S.E. 2d at 650 (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1976).

In the case *sub judice*, we have already determined that the covenants not to compete are valid and enforceable. The crux of plaintiff's complaint is that defendant purposely and maliciously solicited customers of plaintiff's in breach of the covenants not to compete. In the instant case, plaintiff alleged, and the evidence shows, that upon terminating his employment with plaintiff, de-

fendant Kuykendall solicited the same customers he had serviced while employed by plaintiff, a direct violation of the covenants not to compete. Moreover, the evidence shows that defendant Share knew, at the time it hired Kuykendall, that Kuykendall had signed covenants not to compete, and, in fact, agreed to pay all legal expenses, if any, Kuykendall would incur as a result of breaching the covenants. The evidence also shows that once Kuykendall was enjoined from soliciting plaintiff's customers, a vice-president of Share, with the information supplied by Kuykendall, continued to solicit plaintiff's customers. Thus, we do not have a case, such as in *Hooks*, in which a competitor is merely hiring a competitor's employees.

Defendant Share contends, however, that it was justified in interfering with the contract because it had a good faith belief that the covenants in question were unenforceable. However, if a defendant has knowledge of the facts concerning plaintiff's contractual rights, he "is subject to liability even though he is mistaken as to their legal significance and believes that there is no contract or that the contract means something other than what it is judicially held to mean." *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E. 2d 176, 182 (quoting Restatement of the Law of Torts, Sec. 766(e)). Thus, we reject defendant's argument that a good faith belief that the covenants are unenforceable automatically justifies contractual interference.

However, when the issue to be decided is the intent of a party, the general rule is that it is a question of fact to be determined by a jury. *See Little v. National Service Industries, Inc.*, 79 N.C. App. 688, 340 S.E. 2d 510 (1986). In the case *sub judice*, while the jury could reasonably infer from the evidence presented that defendant Share intentionally induced Kuykendall to breach the non-competition covenants of his contract for a purpose "other than as a reasonable and *bonafide* attempt to protect the interests of the defendant," it likewise could infer that defendant Kuykendall breached these covenants without any encouragement or direction from defendant Share. This is especially true in light of the conflicting evidence as to whether defendant Share was aware of the contents of the covenant not to compete. Because the evidence is conflicting and supports two possible opposing inferences, the trial court erred in granting plaintiff's motion for

directed verdict. *Murdock v. Ratliff; Connor Homes v. Ratliff; Ratliff v. Moss*, 310 N.C. 652, 314 S.E. 2d 518.

Therefore, while we agree with the Court of Appeals that the trial court erred in granting plaintiff's motion for directed verdict, we hold that, for the reasons stated above, the Court of Appeals erred in remanding the case for entry of directed verdict in defendants' favor. We hold that it is a jury determination as to whether defendant Share interfered with the contracts without justification.

## Unfair Trade Practices Act

[5]    Plaintiff next contends that the Court of Appeals erred in reversing the trial court's granting of plaintiff's motion for directed verdict against defendants on the question of whether defendants violated the North Carolina Unfair Trade Practices Act.

The Court of Appeals held that the record was inadequate to determine whether plaintiff's evidence was sufficient concerning whether the defendants' acts unrelated to the covenants not to compete constituted unfair trade practices under N.C.G.S. § 75-1.1. The Court of Appeals remanded the case for a new trial on this issue. Because the Court of Appeals held that the covenants not to compete were unenforceable, it found that the trial court's reliance on these restrictive covenants as the basis for finding a violation of N.C.G.S. § 75-1.1 was in error.

We have already held that the covenants not to compete are enforceable; therefore, we disagree with the Court of Appeals' holding that the trial court erroneously relied on these covenants in determining whether defendants' actions violated N.C.G.S. § 75-1.1. However, we agree with the Court of Appeals concerning the inadequacy of the record. The Court of Appeals found the record deficient as to whether the plaintiff's evidence concerning the allegations unrelated to the covenants not to compete make out a case under N.C.G.S. § 75-1.1. We agree. Moreover, we find the same problem concerning the covenants not to compete. Furthermore, under N.C.G.S. § 75-1.1, it is a question for the jury as to whether the defendants committed the alleged acts, and then it is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice. *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). In the case *sub judice*, the

only issue submitted to the jury was that of damages. This was error, and therefore, the case must be remanded for a new trial on issues relating to the Unfair Trade Practices Act.

We note, however, that while urging this Court to affirm the Court of Appeals' holding remanding the case for a new trial, defendants contend that even if the restrictive covenants are enforceable, as we have so held, N.C.G.S. § 75-1.1 is inapplicable to a covenant not to compete or to tortious interference with contract situations. Essentially, defendants contend that N.C.G.S. § 75-1.1 should be limited to actions involving consumers or, when used to protect businesses, it is limited only to areas involving fraudulent advertising or a buyer-seller relationship.

We disagree with defendant. First, we have not limited the applicability of N.C.G.S. § 75-1.1 to cases involving consumers only. *See Olivetti v. Ames Business Systems, Inc.,* 319 N.C. 534, 356 S.E. 2d 578 (1987). After all, unfair trade practices involving only businesses affect the consumer as well. Second, although the issues in the cases cited by defendant involving unfair trade practices between businesses concerned fraudulent advertising and buyer-seller relationships, there is nothing in those opinions stating that these are the only non-consumer situations in which § 75-1.1 could be applied. *See Olivetti v. Ames Business Systems, Inc.,* 319 N.C. 534, 356 S.E. 2d 578; *Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc.,* 38 N.C. App. 393, 248 S.E. 2d 739 (1978). We reject defendants' contention that the North Carolina Unfair Trade Practices Act should be so limited.

## Conclusion

In summary, we hold that the trial court, while erroneously finding that the 1982 agreement was superseded by the 1983 agreement, correctly granted plaintiff's motion for directed verdict against defendant Kuykendall for breaching the 1983 supplemental agreement containing the covenant not to compete. Because the restrictions in the 1982 agreement were encompassed in the 1983 agreement, plaintiff was not prejudiced by the trial court's finding that the 1983 agreement superseded the 1982 agreement. However, because we are unable to determine what portion of the damages was awarded to plaintiff because of defendant Kuykendall's breach of the covenant not to compete, a

new trial is ordered for a jury determination of the amount of defendant Kuykendall's liability pursuant to his breach of the 1983 covenant not to compete.

Second, because we hold that it is a jury determination as to whether defendant Share tortiously interfered with the restrictive covenants contained in both agreements, the case is remanded for a new trial concerning this issue.

Third, because of the inadequacy of the record before this Court, and because it is a jury determination as to whether defendant Share committed the alleged acts concerning N.C.G.S. § 75-1.1, the case is remanded for trial consistent with this opinion.

Before the Court of Appeals, plaintiff made other assignments of error which that court did not address because of its disposition of the case. We decline to address these additional assignments of error because they may not arise at the new trial.

The decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; and remanded.