REEVE & ASSOCS. v. UNITED CAROLINA BANK, 1997 NCBC 2

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | ) | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF GUILFORD | ) | SUPERIOR COURT DIVISION |
| | | 96 CVS 4695 |
| REEVE & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| UNITED CAROLINA BANK (formerly | ) | |
| Triad Bank) and FIRST BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STATEMENT OF FACTS

{1} This case is before the court on motions to dismiss pursuant to Rule 12(b)(6) filed by defendants United Carolina Bank and First Bank. For the reasons set forth below, the court grants defendants' motions with respect to the first five claims for relief. Plaintiff's eighth claim for relief, which is designated an alternative claim, states a claim for relief, but may be subject to dismissal on summary judgment if the "alternative" facts alleged to support it cannot be proven.

{2} Harry G. Gordon appears for the plaintiff, J. Alexander S. Barrett appears for defendant First Bank, and Donald G. Sparrow for defendant United Carolina Bank.

## FACTUAL BACKGROUND

{3} The factual allegations set forth in the complaint and amended complaint are accepted as true for purposes of this determination. The following facts appear from the complaint.

{4} Plaintiff is a North Carolina corporation and is the assignee of a note in the principal amount of $404,904.18 and supporting security agreement, which were executed by Piedmont Lift Truck Repair and Sales, Inc. (Piedmont Number 2). The April 19, 1991 note was given as partial consideration for the purchase by R. Thompson Lentz and Cheryl Lentz and their company, ARTL, Inc., of the assets in the corporate name of Piedmont Lift Truck Repair and Sales, Incorporated (Piedmont Number 1). Piedmont Number 1 was owned by Paul Beckham and his wife. The Beckhams and Piedmont Number 1 are the assignors who transferred the promissory note and security agreement to Reeve and Associates. The promissory note and security agreement provided that the holder (in this case Reeve and Associates) would have a perfected security interest in the inventory and other assets of Piedmont Number 2, subject to the prior security interest of Banker's Trust (now United Carolina Bank) and First Bank. Banker's Trust and First Bank were aware of and approved the sale of assets and business from Piedmont Number 1 to Piedmont Number 2. The defendant banks were aware that Piedmont Number 1 had a purchase money security interest in the assets of Piedmont Number 2. The Beckhams and Piedmont Number 1 were aware of the prior security interest of the defendant banks and the fact that their security interest was a junior lien.

{5} In November of 1992 plaintiff declared Piedmont Number 2 and the Lentzes in default under the note and demanded payment in full. Suit was filed against Piedmont Number 2 and the Lentzes and a judgment entered in favor of plaintiff against Piedmont Number 2 and the Lentzes on June 13, 1994. The Lentzes are in bankruptcy.

{6} This complaint alleges that in March of 1993, after plaintiff had declared its default, the Lentzes and Piedmont Number 2, on the request and at the behest of defendants, permitted an auction of Piedmont Number 2's inventory. (Complaint, paragraph 20.) On March 24, 1993, an auction was held by the Mendenhall Auction Company and eighty percent of the existing inventory was sold, yielding net proceeds of only $56,542.98. The net proceeds of the auction were remitted to the defendant banks.

{7} It is alleged in paragraph 24 of the complaint that the inventory which was sold was "valued at approximately $350,000 to $450,000 at the lower of cost or wholesale value, and $700,000 to $900,000 at retail." It is alleged in paragraphs 42 and 43 of the complaint that the banks were collectively owed a total of $386,013 as of December 31, 1992.

{8} The auction conducted by Mendenhall took place without notice to plaintiff by Piedmont Number 2, the Lentzes or the defendant banks.

{9} Absent from the complaint are any allegations that the defendant banks knew of the failure of their debtor to notify the plaintiff of the auction sale or any allegations that the defendant banks caused the debtor to fail to notify the plaintiff of the auction sale.

## ISSUE AND OPINION

{10} Defendants' motions pursuant to Rule 22(b)(6) challenge the legal theories set forth by plaintiff in the seven claims for relief asserted in the original complaint. The issue may be stated more broadly as follows: Is there any theory by which a secured creditor with a superior lien ("superior lienholder") may be held liable for a debtor's failure to notify a junior lienholder ("junior lienholder") of an auction sale of a substantial quantity of debtor's inventory in which both secured parties have a valid security interest where the superior lienholder (1) induces the debtor into conducting the sale, (2) chooses the auctioneer, (3) knows of the sale, (4) attends the sale and consults with the debtor on what is to be sold, (5) knows of the junior lienholder's position, and (6) receives the proceeds of the sale (which are insufficient to retire the first lien) when the superior lienholder did not know of the failure to notify the junior lienholder and did not cause the debtor to fail to notify the junior lienholder?

{11} It is clear under North Carolina General Statute Section 25-9-504(3) that a secured party who has repossessed its collateral must notify both the debtor and other secured parties, of which it has written notice, before disposing of the collateral. It is equally clear that the debtor, Piedmont Number 2, had an obligation to notify the plaintiff if it were going to conduct an auction sale of the inventory in which the plaintiff had a security interest.

{12} The court holds that five of the seven causes of action asserted in the original complaint fail to state a claim against the defendant banks. The eighth claim for relief asserts a valid claim, if defendants take the position that they had repossessed the collateral prior to its sale. If defendants take the position that they had not repossessed the collateral prior to sale, then the eighth alternative claim for relief fails.

{13} The seven causes of action alleged in the original complaint are an attempt to find a theory by which a secured party may be held responsible for a debtor's conduct of a sale in a commercially unreasonable manner. Each will be addressed separately.

## FIRST CLAIM FOR RELIEF (JOINT VENTURE)

{14} Plaintiff's first claim for relief seeks to establish a joint venture between the defendant banks, the Lentzes and Piedmont Number 2. The allegations, fairly read, consist of a claim that the debtor, whether by agreement with, inducement by, or coercion of defendant banks sold inventory in which the defendant banks held a superior security interest in order to reduce the total indebtedness to the banks. Such allegations do not establish a joint venture in which the parties agree to share profits. The sharing of profits is an essential element to establish a joint venture. See *Pike v. Wachovia Bank and Trust Company,* 274 N.C. 1*,* 161 S.E.2d 453 (1968). The allegations are also insufficient to establish other key elements of

a joint venture such as joint control and a common business purpose. See *Edwards v. Northwestern Bank,* 39 N.C. App. 261, 230 S.E.2d 651 (1979). There is no allegation that the defendant banks were to receive anything more from the sale than what they were already entitled to by contract: the repayment of debt. Plaintiffs allegations are insufficient as a matter of law to establish a joint venture. As the court noted in *Edwards*: "To hold on these facts that a secured lender became a joint venturer with its debtor would seriously disrupt the carefully constructed system of secured financing." 39 N.C. App. at 277.

## SECOND CLAIM FOR RELIEF

### (BREACH OF FIDUCIARY DUTIES/CONSTRUCTIVE FRAUD)

{15} For purposes of the analysis of this claim, the court assumes that plaintiff has adequately alleged that Piedmont Number 2 held the auction sale as a result of pressure from the defendant banks who desired to have their debt paid down. Plaintiff's allegations fail to state a claim for relief for several reasons.

{16} First, plaintiff has not sufficiently alleged dominion and control of plaintiff's business and affairs by the defendant banks. It is not sufficient to generally allege that one party dominated the will of another. Facts and circumstances must be alleged to support the general claim. There must be allegation and proof of an overall domination and control of the business. The mere allegation that a secured lender caused an action to be taken to pay down its debt does not establish overall dominion and control of the affairs of a business necessary to establish any fiduciary relationship. Reading this complaint as a whole, plaintiff does not allege overall dominion and control of the affairs of Piedmont Number 2 by the defendant banks. It alleges only that the banks put pressure on the debtor to conduct the sale.

{17} Second, even if plaintiff had adequately alleged dominion and control, that does not necessarily establish the requisite fiduciary relationship, that is, a relationship of trust and confidence between either the defendant banks (senior lienholders) and plaintiff (junior lienholder) or debtor and plaintiff (junior lienholder). The mere existence of a debtor/creditor relationship does not create a fiduciary relationship. Such relationships are controlled by Article IX of the Uniform Commercial Code.[fn1] To hold on these facts that a secured lender became a fiduciary to the junior lienholder would also disrupt the carefully constructed system of secured financing in this state. See *United Virginia Bank v. Air-Lift Associates, Inc.,* 79 N.C. App. 315, 339 S.E. 2d 90 (1986).

## THIRD CLAIM FOR RELIEF

### (INTENTIONAL INTERFERENCE WITH CONTRACT)

{18} Under this cause of action plaintiff theorizes that defendant banks may be held liable for interfering with those portions of the contract between plaintiff and debtor which required that debtor's assets be sold only in the ordinary course of business and that debtor maintain inventory of at least $750,000 at all times.

{19} North Carolina law is clear that there are five key elements to an intentional interference with a contract cause of action. They are: (1) a valid contract between the plaintiff and a third person, which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *See United Laboratories, Inc. v. Kuykendall, 322* N.C. 643, 370 S.E. 2d 375 (1988). For purposes of analyzing this claim for relief the court will focus on the fourth and fifth elements.

{20} Plaintiff alleges in its pleadings that the defendant banks held a superior lien position and that debtor was indebted to defendant banks in substantial sums. Plaintiff's theory rests upon an assumption that there was no legitimate justification for defendant banks' actions short of their declaring default, seizing the collateral and selling it. North Carolina law is clear that it is this state's policy not to force creditors into taking possession of assets. See *NCNB v. Sharpe,* 35 N.C. App. 404, 241 S.E 2d 360 (1978). The implication of the holding in that case is that secured parties may continue to work with a debtor to

achieve a satisfactory settlement of the debt short of repossession. Repossession is a remedy that is exercisable at the will of the superior lienholder. The rationale for the policy is obvious. Creditors are encouraged to find solutions to credit problems short of repossession with its attendant adverse consequences to all parties. To hold that any action by a lender to collect its debt short of repossession would subject the lender to a claim of interference with contract by junior lienholders would cause significant problems for our system of secured financing. The court finds that the plaintiff has failed to adequately plead the fourth element of intentional interference with contract since the pleadings themselves disclose a proper business justification for the actions of the defendant banks.

{21} The court also believes that there is serious question with respect to the fifth element. The action complained of by the plaintiff with respect to this cause of action is the inducement or coercion of the auction sale. It is not clear that that action resulted in actual damages to the plaintiff. Plaintiff had already declared the debtor in default and sued both Piedmont Number 2 and the Lentzes. In this situation the auction resulted in proceeds which were substantially less than the amounts owed to the defendant banks. The allegations of the complaint center on the failure of the debtor, Piedmont Number 2, to notify plaintiff of the sale. There are no other allegations that the auction sale was not commercially reasonable. That raises two problems with respect to the plaintiff's case and the fifth element of intentional interference.

{22} First, there is no direct allegation that the mere holding of the auction sale resulted in actual damage to the plaintiff. In fact, absent the notice issue, the pleadings would affirmatively disclose no damage to the plaintiff since a commercially reasonable sale would have occurred which produced an amount far less than the senior liens of the defendant banks.

{23} While there is no direct precedent in North Carolina, it is clear from decisions in other jurisdictions that a junior lienholder's claim under 9-507(l) is limited to the amount of surplus if a commercially reasonable sale would have produced an amount in excess of the senior lien. See *McGowan v. Nebraska State Bank,* 427 N.W.2d 772 (1988); *Young v. Golden State Bank,* 589 P.2d 1381 (Colo. 1978); *River Valley State Bank v. Peterson,* 453 N.W.2d 193 (1990); *Food City, Inc. v. Fleming Companies,* 590 S.W. 2d 754 (Tex.Civ.App. 1979); and *Nickles Rights and Remedies Between UCC Article IX, Secured Parties with Conflicting Interests in Goods,* 68 Il.Rev. 217, 235 (1983).

{24} In this case there is an affirmative allegation that an auction sale produced a deficiency of over $200,000, which was exactly the result in the *McGowan* case, supra. In this case the junior lienholder may not recover what he would have paid for the assets in excess of the senior lien, but can only recover any difference of the fair value at a commercially reasonable sale and the amount of the senior liens.

{25} For the foregoing reasons plaintiff's third claim for relief should be dismissed.

## FOURTH CLAIM FOR RELIEF

### (VIOIATION OF G.S. SECTION 114)

{26} In the fourth claim for relief plaintiff alleges a civil claim for relief based upon a criminal statute. Criminal provisions do not give rise to civil causes of action. See *Gillikin v. Springle,* 254 N.C. 240, 118 S.E.2d 611 (1961) and *Hawkins v. Webster,* 78 N.C. App. 589, 337 S.E.2d 682 (1985).

### FIFTH CLAIM FOR RELIEF (CONVERSION)

{27} In order to establish a cause of action for conversion the plaintiff must plead two essential elements: (1) Ownership in the plaintiff; and (2) a wrongful conversion by defendant. *Gallimore v. Sink,* 25 N.C. App. 65, 218 S.E.2d 181 (1975). In this case plaintiff's pleadings fail on both counts. Nowhere in the complaint does plaintiff allege a right to possession of the property superior to that of the defendant banks'. To the contrary, plaintiff concedes in the complaint that the banks' liens were superior to plaintiff's. With respect to the second element, plaintiff never alleges that the defendants took actual physical possession of the inventory. To the contrary, all the allegations indicate that the inventory

remained in the possession of the debtor until sold at auction. Even if the defendants had taken possession of the property, their action in doing so would not have been unlawful since they held a lien. Plaintiff's remedy is under North Carolina General Statute Section 25-9-307(1); not conversion.

### SIXTH CIAIM FOR RELIEF (CONSPIRACY)

{28} The sixth claim for relief presents a dilemma for the court. Technically speaking, plaintiff may have alleged a cause of action; however, the rationale behind the cause of action is illogical. Under a cause of action for conspiracy there must be an act or acts committed in pursuance of the conspiracy which would serve as the predicate, i.e., an unlawful act or a lawful act done in an unlawful manner which damaged plaintiff. The action of Lentz in failing to notify plaintiff of the auction sale is the predicate unlawful act alleged. The logical problem with the conspiracy theory drawing in the banks is that the defendant banks had no motive or incentive to conspire to do that. They held superior first liens. They were going to get their money first no matter what notice was provided to plaintiff. They would have benefited by plaintiff being at the auction to the extent plaintiff purchased inventory or brought others to do the same. Plaintiff's presence at the auction posed no threat to the defendant banks as far as the court can determine at this stage. They had no motive to eliminate the junior lien interest and no motive to help Lentz or Piedmont 2 in doing so.

{29} Further, plaintiff must establish that it has been damaged under the conspiracy claim for relief. Plaintiff must also allege and prove that a reasonable commercial sale of which plaintiff had notice would have resulted in receipt of proceeds in excess of the amounts owed under the superior liens.

{30} For the foregoing reasons, it would be error to dismiss the sixth claim for relief pursuant to Rule 12-B(6). After completion of discovery on the issue of conspiracy and damages the court will be in a better position to assess the claim on a motion for summary judgment.

### SEVENTH CLAIM FOR RELIEF (CHAPTER 75)

{31} Since the sixth claim for relief has survived at this stage, the seventh claim for relief for violation of Chapter 75 will also survive, but only to the extent it is predicated upon establishment of the sixth claim for relief. It does not independently state a claim upon which relief may be granted against the defendant banks.

### EIGHTH CLAIM FOR RELIEF (ALTERNATE)

{32} Plaintiff has filed a motion to amend to add an eighth claim for relief. While the eighth claim for relief incorporates all of the other claims for relief, it is based upon an entirely different and inconsistent factual premise. It is contingent on whether or not defendant banks claim to have conducted the auction sale themselves after default and repossession. If defendant banks did not repossess the inventory and then sell it, this claim for relief should be dismissed. Again, the court believes that a motion for summary judgment will be the appropriate vehicle for disposing of this claim after discovery is complete on whether or not defendants claim to have repossessed the inventory. Indeed, if defendant banks do not claim to have repossessed the inventory and plaintiff does not wish to pursue a claim based upon proof that they did so, plaintiff should voluntarily dismiss the eighth claim for relief.

{33} Based upon the foregoing, it is now, therefore, ORDERED:

1. Plaintiff's motion to amend to add the eighth claim for relief is granted. Defendants shall have twenty days to respond to the amended complaint.

2. Defendants' motions to dismiss claims for relief one through five are granted.

3. Defendants' motion to dismiss claims six and seven are denied.

4. The parties will have ninety days to complete discovery, which should focus on the following issues:

      (a) whether or not notice was given to plaintiff of the auction sale; and

      (b) whether or not defendant banks conspired with Lentz and Piedmont 2 to conduct the auction sale without notice to plaintiff in order to eliminate plaintiff's junior lien, and, if so, why; and

      (c) whether or not defendant banks claim to have conducted the auction sale after default and repossession; and

      (d) whether or not plaintiff notified defendant banks of its lien interest prior to the sale, and, if so, how; and

      (e) plaintiff's claim for damages, which is limited to whether a commercially reasonable sale with proper notice to plaintiff would have resulted in a sale at fair market value which would have exceeded the amount owed to defendant banks under their liens, and, if so, by how much.

5. The court's previous orders staying mediation in this matter are rescinded.

This 6th day of October 1997.

_____

Footnote 1 The court also notes the inconsistency in plaintiff's pleadings. Plaintiff's allegations of negotiation and agreement in connection with the auction sale contained in paragraph 51 are inconsistent with its general allegation of domination and control.