**FEDERAL FINANCIAL CO., Plaintiff,**

v.

**Samuel M. LONGIOTTI, Defendant.**

**No. 5:95–CV–236–BO(3).**

United States District Court,
E.D. North Carolina,
Western Division.

Feb. 4, 1996.

**420**

Donald J. Harris, Margaret K. Winfield, Petree Stockton, Raleigh, NC, for plaintiff.

James B. Angell, Wyche & Story, Raleigh, NC, for defendant.

### *ORDER*

TERRENCE WILLIAM BOYLE, District Judge.

This matter comes before the Court on multiple motions, all of which concern defendant's desire to see the complaint in this matter stricken for insufficient process and insufficient service of process pursuant to Fed.R.Civ.P. Rules 12(b)(4) and 12(b)(5).

The record indicates that on March 22, 1995, plaintiff filed its complaint and caused a summons to issue. On April 11, 1995, the summons was returned unexecuted, stating that defendant was out of the country at the time and would return later. The summons was re-issued on May 2, 1995, but was returned unexecuted on June 15, 1995, with the following statement by the Deputy Sheriff: "unable to locate in time for service after many attempts." Defendant also refers to an incident on April 25, 1995, where plaintiff attempted to effect service by leaving the summons and a copy of the complaint at defendant's house with "Dina," his housekeeper.[1] On May 18, 1995, although no return of service had been executed, defendant saw fit to file with the Court a document entitled "Responsive Pleading." This document was in the form of an answer and counterclaim, twenty pages in length, setting forth twenty-six defenses and counter-claims and two motions for joinder in 143 numbered paragraphs. Two of the defenses asserted in the responsive pleading were insufficiency of process and insufficiency of service of process. The plaintiff filed a reply to the "responsive pleading" on June 7, 1995. However, on June 20, 1995, the defendant filed his motion to dismiss pursuant to Fed.R.Civ.P. Rules 12(b)(4) and 12(b)(5).

On June 27, 1995, the magistrate judge assigned to this case held a conference to address his concerns at the time "over the state of the pleadings." The "responsive pleading" and the response thereto were struck from the record, and defendant was allowed time to file an amended motion to dismiss on the service grounds. On July 10, 1995, defendant's amended motion was filed, but nine days later, defendant filed an amended-amended motion, as well as a motion for leave to file that motion. Plaintiff opposed amending the amended motion, and filed a response to the once-amended motion. Defendant replied to both measures, and also filed two motions to strike affidavits attached to plaintiff's opposition, to which plaintiff responded. These pleadings are considered *en masse* below. It should also be noted that on September 26, 1995, an amended complaint was filed naming an additional defendant. There is apparently no challenge to service of process by the other defendant, although it is unclear whether the amended complaint was also served on Mr. Longiotti, thereby mooting the question now presented. Nevertheless, the Court will proceed to rule on defendant's motion. For the reasons given below, that motion must be DENIED.

\*     \*     \*

The events leading up to the disputed incident clearly indicate that the defendant was well-aware that a complaint had been filed against him and that the plaintiff was attempting to effect service of process. Given

---

1. The record does not indicate whether or not "Dina" was "a person of suitable age and discretion residing therein." Fed.R.Civ.P. Rule 4(e)(2).

this knowledge, which can be fairly imputed to his wife,[2] her actions on the night in question appear to be a clear attempt to avoid service at all costs. Those costs were rather high.

On the evening of May 31, 1995, plaintiff engaged Mr. Louis J. Wheeler, of APS process servers, to pay a visit to the Longiotti household. Mr. Wheeler testified that the door was answered by the Longiottis' eight-year-old daughter, of whom he asked if it was possible that he could speak with her father. The girl allegedly said, "Daddy, aren't you coming to the door?" whereupon an undiscernible male voice was followed by the appearance of defendant's wife, Sue Medlin Longiotti, who represented herself simply as "Sue Medlin." Ms. Longiotti allegedly told Mr. Wheeler that her attorney advised her not to accept anything that didn't arrive in the regular mail. She then asked Mr. Wheeler whether he was a Federal Express employee, referring to the Federal Express envelope that had been delivered to Mr. Wheeler containing the summons and a copy of the complaint, although the legal documents were by now in a separate manila envelope that Mr. Wheeler was also carrying. Mr. Wheeler testified he disclaimed being a Federal Express employee, explaining that he was a private investigator who had been retained to serve process on Mr. Longiotti and that the papers had been delivered to him via Federal Express. He showed Ms. Longiotti his private investigator's license, which she read aloud as, "private investigator," and also gave her his business card. Mr. Wheeler explained that private process servers such as he were retained in order to reduce the workload for the Sheriff's Department, to which she replied that a person from the Sheriff's Department had previously visited the residence in an attempt to serve process.

Ms. Longiotti's testimony[3] contradicts much of this account. She made no mention of most of these alleged events, and claimed that Mr. Wheeler acted in a suspicious manner and represented to her that he was an employee of Federal Express or someone who handled "overflow" packages for Federal Express.

Since Ms. Longiotti refused to accept the manila envelope, Mr. Wheeler left it at her doorstep and departed from the location in his car. Ms. Longiotti then called the police department, stating that a suspicious man had left an equally suspicious package at her doorstep, alluding that she feared this was a bomb left by the "Unabomber." The neighborhood was evacuated, the bomb squad was called in, and the "Unabomber" task force was notified. The Red Cross was also apparently alerted to the possibility that several families had been evacuated from their homes.

Detective William E. Frick of the Chapel Hill Police Department testified that he was the "on-call" investigator in charge of the bomb scare. Det. Frick testified that Ms. Longiotti gave another officer Mr. Wheeler's business card, and that another officer called Mr. Wheeler to inquire about the manila envelope. The officer thereafter informed Det. Frick that the envelope contained legal papers and that Mr. Wheeler had visited the home in order to serve process on Mr. Longiotti. Det. Frick opened the envelope, *verified* that it contained legal documents, and handed those documents to Ms. Longiotti.

Defendant's motions to strike portions of the Wheeler and Frick affidavits are DENIED. The affidavits contain no objectionable material or hearsay statements.

The Court reaches the following conclusions:

(1) the defendant willfully and intentionally avoided service of process.

(2) the defendant's wife knew that Mr. Wheeler was attempting to serve process.

---

2. It is difficult to believe that she was unaware of repeated visits by the Sheriff, or of the massive "responsive pleading" filed by her husband in this Court on May 18, 1995.

3. In addition to the allegations set forth in defendant's amended motion and brief in support thereof, defendant moved to amend the amended motion in order to add an affidavit by Ms. Longiotti. This latter motion was opposed, properly, by plaintiff. Nevertheless, the affidavit was considered by the Court, although it proves unconvincing.

Mr. Wheeler did not engage in any deception.

(3) service of process was effected by Mr. Wheeler.

(4) service of process was also effected by Det. Frick, who intended to effectuate service of process when he verified the envelope's contents as legal documents, was informed that they had been delivered in an attempt to effect service of process, and thereafter served defendant's wife at their home with those papers.

Setting off a bomb scare in an attempt to avoid service of process, with all the attendant neighborhood dislocation and strain upon local protective services, is outrageous. Defendant's motion is DENIED. The "responsive pleading" of May 18, 1995, and the plaintiff's response thereto, are hereby ORDERED RE–INSTATED in the record and shall serve as the defendant's answer and plaintiff's response, respectively.

SO ORDERED.

