Covenant Equip. Corp. v. Forklift Pro, Inc., 2008 NCBC 10.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 21932

COVENANT EQUIPMENT
CORPORATION
 d/b/a WHOLESALE FORK LIFTS,

       Plaintiffs,

v.

FORKLIFT PRO, INC., BUCKY W.
CALDWELL, TIMOTHY SMITH and
WILLIAM CARNIE,

       Defendants.

**ORDER AND OPINION ON
DEFENDANT CARNIE'S MOTION TO
DISMISS**

{1}    This case arises out of Plaintiffs' suit for Misappropriation of Trade Secrets, Unfair and Deceptive Trade Practices, Civil Conspiracy, Breach of Fiduciary Duty, Tortious Interference with Contractual Relations, Fraud, Unjust Enrichment, Conversion, and Breach of Contract.

> *Baucom, Claytor, Benton, Morgan & Wood, PA by Rex C. Morgan and The Business Law Advisors by Daryl L. Hollnagel for Plaintiffs.*

> *Horack Talley by John W. Bowers for Defendant William Carnie.*

Tennille, Judge.

## I.

## PROCEDURAL BACKGROUND

{2}    This action was filed in Mecklenburg County on November 1, 2007. Defendant Carnie filed the Notice of Designation on January 14, 2008. This action was designated a mandatory complex business case by Order of the Chief Justice of the Supreme Court of North Carolina dated January 15, 2008, and subsequently

assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases by Order dated January 15, 2008.

{3}     Defendant Carnie filed motions to dismiss under each of Rules 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the North Carolina Rules of Civil Procedure on February 13, 2008.  The Court heard oral arguments on the motions on April 2, 2008.

## II.

## FACTUAL BACKGROUND

### A.

### THE PARTIES

{4}     Plaintiff Covenant Equipment Corporation, d/b/a Wholesale Fork Lifts ("Plaintiff") is a South Carolina corporation having its principal place of business in York County, South Carolina.  Plaintiff is engaged in the business of wholesale, service, and maintenance of used forklifts and related equipment.

{5}     Defendant Forklift Pro, Inc. ("Forklift") is a North Carolina corporation having its principal place of business in Pineville, North Carolina.

{6}     Defendant Buck W. Caldwell ("Caldwell") is a resident of Mecklenburg County, North Carolina.

{7}     Defendant Timothy Smith ("Smith") is a resident of York County, South Carolina.

{8}     Defendant William Carnie ("Carnie") is a resident of York County, South Carolina

{9}     Forklift, Caldwell, Smith, and Carnie will be referred to collectively as the "Defendants."  Caldwell, Smith, and Carnie will be referred to collectively as the "Individual Defendants."

B.

## THE PARTIES' PRIOR DEALINGS

{10}    Plaintiff and Wholesale Fork Lifts, Inc.[1] entered into an Asset Purchase Agreement in June 2004.  (Compl. ¶¶ 6–7; Am. Answer ¶¶ 6–7.)   Caldwell was the sole shareholder of Wholesale Fort Lifts, Inc.  (Compl. ¶ 7; Am. Answer ¶ 7.)  At that time, Caldwell and his wife, Janet Caldwell[2], executed non-competition agreements (the "Noncompetition Agreement").  (Compl. ¶ 10; Am. Answer ¶ 10.) Caldwell was employed by Plaintiff from the date of the sale through January 17, 2007.  (Compl. ¶ 11; Am. Answer ¶ 11.)  Forklift was incorporated June 18, 2007. (Compl. ¶ 12; Am. Answer ¶ 12.)  Caldwell owns the majority of outstanding shares and is the registered agent of Forklift.  (Compl. ¶ 12; Am. Answer ¶ 12.)  Carnie and Smith were employees of Plaintiff and are now employees of Forklift.  (Compl. ¶¶ 15–16; Am. Answer ¶¶ 15–16.)  Carnie and Wholesale Fork Lifts, Inc. entered into an "Employment, Confidentiality, and Noncompetition Agreement" (the "Employment Agreement") on February 11, 2002, prior to Plaintiff's acquisition of Wholesale Fork Lifts, Inc.'s assets.  (Compl. Ex. A.)  The Employment Agreement was attached to the Complaint and is incorporated herein by reference.  Carnie's employment with Plaintiff ended on or about July 6, 2007.  (Compl. ¶ 15.)  Carnie's employment with Forklift began immediately or shortly thereafter.  (Compl. ¶ 15.)

III.

## THE ALLEGATIONS

{11}    Plaintiff alleges that the Defendants misappropriated Plaintiff's trade secrets (Compl. ¶ 20) in furtherance of a civil conspiracy (Compl. ¶ 21) with the intent to compete against Plaintiff in an unfair and deceptive manner, convert Plaintiff's property, misappropriate Plaintiff's trade secrets, and to interfere with Plaintiff's contractual rights (Compl. ¶¶ 23, 26).  Plaintiff alleges that the

---

[1] "Wholesale Fork Lifts, Inc." is a non-party entity separate and distinct from Plaintiff.  Plaintiff is doing business as "Wholesale Fork Lifts."  "Wholesale Fork Lifts, Inc.," when used herein, refers to the separate entity whose assets were purchased by Plaintiff.

[2] Ms. Janet Caldwell is not a party to this suit.

Defendants have engaged in unfair and deceptive trade practices (Compl. ¶ 23) and intentionally interfered with Plaintiff's contractual relationships (Compl. ¶ 37). Plaintiff alleges that the Defendants were unjustly enriched by their actions. (Compl. ¶ 52–53.)

{12} Plaintiff alleges that the Individual Defendants breached their fiduciary duty to Plaintiff when they engaged in activities "contrary to the best interests of the Plaintiff" such as the alleged actions took in furtherance of the civil conspiracy (Compl. ¶ 31). Plaintiff alleges that the Individual Defendants converted Plaintiff's property. (Compl. ¶¶ 33, 55.)

{13} Plaintiff alleges that Caldwell has intentionally breached his Noncompetition Agreement with Plaintiff (Compl. ¶¶ 41–42) and has engaged in fraud related to the accelerated payoffs of promissory notes and the promises of retirement while retaining an independent contractor position (Compl. ¶¶ 44–50).

{14} Plaintiff alleges that Carnie has breached his Employment Agreement with Wholesale Fork Lifts, Inc. (Compl. ¶¶ 59–63.)

IV.

MOTIONS TO DISMISS

{15} Carnie has moved to dismiss the claims against him on several Rule 12 of the North Carolina Rules of Civil Procedure ("Rule 12") motions. First, insufficiency of process under Rule 12(b)(4) of the North Carolina Rules of Civil Procedure ("Rule 12(b)(4)"). (Def.'s Mot. Dismiss 1.) Second, insufficiency of service of process under Rule 12(b)(5) of the North Carolina Rules of Civil Procedure ("Rule 12(b)(5)"). (Def.'s Mot. Dismiss 1.) Third, lack of jurisdiction over the person under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure ("Rule 12(b)(2)"). (Def.'s Mot. Dismiss 2.) And fourth, failure to state a claim under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule 12(b)(6)"). (Def.'s Mot. Dismiss 2.) The Court will address the first three motions related to service and jurisdiction before addressing the Rule 12(b)(6) motion.

A.

SERVICE, PROCESS, AND JURISDICTION

{16} Carnie's motions related to service center on three issues. Carnie argues that he should be dismissed because (1) his name was misspelled on the civil summons (Def.'s Br. Supp. Mot. Dismiss 1) although it was spelled correctly on the complaint itself (Pl.'s Br. Opp'n Mot. Dismiss 1), (2) he was not personally served with the civil summons (Def.'s Br. Supp. Mot Dismiss 4) although he knew that he was going to be served and the civil summons was left at his home (Pl.'s Br. Opp'n Mot. Dismiss 2–3), and (3) for the above two reasons the Court has no jurisdiction over him (Def.'s Br. Supp. Mot. Dismiss 6) even though Carnie was the party that filed the Notice of Designation designating this case as a mandatory complex business case before the Business Court (Pl.'s Br. Opp'n Mot. Dismiss 3). For the reasons stated below, the Court DENIES Carnie's motions to dismiss for insufficiency of process, insufficiency of service of process, and lack of jurisdiction.

1.

LEGAL STANDARD

{17} Rule 4 of the North Carolina Rules of Civil Procedure allows for different methods of service of process on a natural person. N.C.R. Civ. P. 4(j)(1). Generally, service can be completed by personally delivering a copy of the summons and complaint or by mailing a copy of the same to the defendant. *Id.* When the copy is personally delivered, it may be given to the defendant, left at the defendant's dwelling "with some person of suitable age and discretion," or left with the defendant's agent. *Id.* at 4(j)(1)(a–b). The summons that is delivered "shall be directed to the defendant." *Id.* at 4(b).

{18} "Where there is a defect in the process itself, the process is generally held to be either voidable or void. . . . Likewise, if the service is insufficient and unauthorized by law the court does not acquire jurisdiction." *Harris v. Maready*, 311 N.C. 536, 542, 319 S.E.2d 912, 916 (1984) (citing 62 Am. Jur. 2d *Process* §§ 21,

30 (1972)). Actual notice, when there is a defect in process or insufficient service, does not remedy the defect or insufficiency. *Id.* at 544, 319 S.E.2d at 917.

{19}  There are two requirements of process and service of process that Carnie brings to the Court's attention. First, that the summons be directed to the defendant. Second, that the summons be delivered to the defendant in a certain manner. The Court will address the summons itself first (insufficiency of process), then the service of the summons (insufficiency of service of process).

2.

ANALYSIS

a.

INSUFFICIENCY OF PROCESS

{20}  The North Carolina Supreme Court is quoted frequently for the maxim that "[a] suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court." *Hazelwood v. Bailey*, 339 N.C. 578, 584, 453 S.E.2d 522, 525 (1995) (citing *Wiles v. Welparnel Constr. Co.*, 295 N.C. 81, 84–85, 243 S.E.2d 756, 758 (1978)). The Court went on to admonish judges not to "put themselves in the position of failing to recognize what is apparent to everyone else." *Id.*

{21}  In *Hazelwood*, the summons listed the incorrect county while the complaint listed the correct county. *Id.* at 585, 453 S.E.2d at 525–26. The Court held that "there was no substantial possibility of confusion" nor were defendants "in fact confused." *Id.* at 585, 453 S.E.2d at 526. The Court relied on *Wiles* and *Harris* in making its decision. *Id.* at 583, 453 S.E.2d at 524.

{22}  In *Wiles*, the summons was ambiguous as to whether the corporation or the registered agent was being sued. *Wiles*, 295 N.C. at 85, 243 S.E.2d at 758. However, the complaint "clearly indicated" who the defendant was. *Id.* Process was adequate in that situation. *Id.*

{23}  In *Harris*, defendant Maready was served with summons directed to C. Roger Harris. *Harris*, 311 N.C. at 541, 319 S.E.2d at 916. The Court found that

there was no "substantial possibility of confusion" even though the summons was directed to a different party because Maready's name was in the caption of the summons. *Id.* at 544, 319 S.E.2d at 917. Process was adequate in that situation. *Id.* at 544, 319 S.E.2d at 918

{24}  The summons that was issued to Carnie here was directed to "William Currie" instead of "William Carnie." (Def. Br. Supp. Mot. Dismiss Ex. A.) The summons was correctly directed to Carnie's address. (Def. Br. Supp. Mot. Dismiss Ex. A.) The summons' caption correctly identified William Carnie as a defendant in the suit. (Def. Br. Supp. Mot. Dismiss Ex. A.) The complaint attached to the summons correctly identified William Carnie as a defendant in the suit. (Compl.) There can be no question that Carnie understood that a suit had been instituted against him. Defendant Carnie's Motion to Dismiss under Rule 12(b)(4) is hereby DENIED.

b.

INSUFFICIENCY OF SERVICE OF PROCESS AND<br>LACK OF JURISDICTION OVER THE PERSON

{25}  Carnie argues that the service of process was insufficient because the sheriff left the summons and complaint at his house but not with him or another person at the residence. (Def.'s Br. Supp. Mot. Dismiss 4–5.) Plaintiff could have served Carnie by either personally delivering the documents or mailing the documents. N.C.R. Civ. P. 4(j)(1). There is a presumption of service when the "return shows legal service by an authorized officer." *Harrington v. Rice*, 245 N.C. 640, 642, 97 S.E.2d 239, 241 (1957). That presumption is rebuttable. *Id.* (citation omitted). The moving party shoulders the burden of proof to rebut service. *Id.* (citation omitted).

{26}  Service has been found adequate "despite a failure to manually deliver the process" when the circumstances surrounding the attempt to serve a defendant leads a federal court to find that the defendant was attempting to evade service. *Currie v. Wood*, 112 F.R.D. 408, 409 (E.D.N.C. 1986) (citing various examples from

federal courts of instances when leaving the summons and complaint at the respective defendant's residence, though not with a resident, was adequate). In *Currie*, the plaintiff had attempted to serve the defendant pursuant to the Federal and North Carolina Rules of Civil Procedure. *Id.* at 408. The defendant had refused that certified mail service. *Id.* at 409. Plaintiff then attempted to personally serve the defendant. *Id.* Plaintiff attempted to give the defendant an envelope that contained the summons and complaint. *Id.* There was no determination of whether the defendant knew what the envelope contained, but he refused to accept the envelope nonetheless. *Id.* The envelope was left in a vehicle while the defendant watched. *Id.* The defendant's wife received the envelope containing the summons and complaint the following day from the owner of the vehicle. *Id.* The court in *Federal Fin. Co. v. Longiotti*, 164 F.R.D. 419 (E.D.N.C. 1996), found that a defendant who had evaded service on several occasions, one of which caused a neighborhood to be evacuated by a bomb squad, was served when an envelope containing the summons and complaint that had been left on the doorstep was handed to defendant's wife. *Id.* at 421. The court found that defendant had "willfully and intentionally avoided service of process." *Id.*

{27}  Carnie argues that these federal decisions have no influence over the holding of this Court. (Def.'s Reply.) Carnie and Plaintiff recognize that Rule 4(e)(2) of the Federal Rules of Civil Procedure is "virtually identical" to Rule 4(j)(1) of the North Carolina Rules of Civil Procedure. (Def.'s Reply; Pl.'s Opp'n Mot. Dismiss 5.) In *Wiles*, the Supreme Court cited the purpose of Rule 4 of the Federal Rules of Civil Procedure when it decided that the narrow interpretation of Rule 4(b) of the North Carolina Rules of Civil Procedure should be overruled for a more lenient interpretation of that rule. *Wiles*, 295 N.C. at 84, 243 S.E. 2d at 758. The purposes of Rule 4 of the Federal Rules of Civil Procedure and Rule 4 of the North Carolina Rules of Civil Procedure have not changed in the intervening years. *See Hazelwood*, 339 N.C. at 581, 453 S.E.2d at 523. Service of process "provide[s] a ritual that marks the court's assertion of jurisdiction." *Id.* (citing *Harris*, 311 N.C.

at 541–42, 319 S.E.2d at 916). When there is an attempt to evade that ritual, this Court will look to interpretations of a virtually identical federal statute for guidance as to this state's statute.

{28} Carnie has submitted three affidavits, one of which was his own, stating that he was at work at the day and time the summons states service was made. (Carnie Aff. ¶ 6; Janet Caldwell Aff. ¶ 5; Smith Aff. ¶ 10.) The Court notes that all of the affiants have an interest in this suit. Carnie and Smith are defendants in this suit. Janet Caldwell is Defendant Caldwell's spouse and an employee of Forklift.

{29} Carnie acknowledges that through his conversations with both Smith and the York County Sheriff's office he was aware that there had been a suit instituted against him and that service had previously been attempted . (Smith Aff. ¶¶ 6–7; Carnie Aff. ¶ 5.) Carnie refused to sign for the certified mail service. (Def.'s Reply; Pl.'s Br. Opp'n Mot. Dismiss 6.) Carnie refused to answer the York County Sheriff's office's questions about service. (Carnie Aff. ¶ 5; Smith Aff. ¶ 7.) Carnie did receive the summons and complaint on the day the sheriff's office left the documents at his residence. (Carnie Aff. ¶ 6.)

{30} Carnie would have the Court believe that this series of events was not an attempt to evade service. The Court disagrees. The Court finds that the circumstances surrounding service show that Carnie was attempting to evade service. The Court finds that the service of process on Carnie was adequate. For the above reasons, the Court hereby DENIES Defendant Carnie's Motion to Dismiss for Insufficiency of Service of Process under Rule 12(b)(5). The Court finds that the service of process was adequate and hereby DENIES Defendant Carnie's Motion to Dismiss for Lack of Jurisdiction of the Person under Rule 12(b)(6). Even if the service of process was not adequate, the Court finds for the below reasons that the filing of a Notice of Designation in an action constitutes a general appearance for the purpose of personal jurisdiction.

{31} "Jurisdiction of the court over the person of a defendant is obtained by service of process, voluntary appearance, or consent." *Grimsley v. Nelson*, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996) (citation omitted). A party waives the defenses of improper venue, insufficiency of process, or insufficiency of service of process if it does not raise such defenses either in a Rule 12 motion made prior to responsive pleading or in its responsive pleading. N.C.R. Civ. P. 12(b), (h). Further, a North Carolina court has jurisdiction over a defendant even in the absence of service of process if the defendant has made a general appearance in the action. N.C. Gen. Stat. § 1-75.7 (LEXIS through 2007 legislation) ("Section 1-75.7"); *see also Simms v. Mason's Stores, Inc.*, 285 N.C. 145, 157, 203 S.E.2d 769, 777 (1974) (construing Rule 12 with Section 1-75.7 to find that Rule 12 "did not abolish the concept of the voluntary or general appearance").[3]

{32} "[A] general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person."[4] *In re Blalock*, 233 N.C. 493, 504, 64 S.E.2d 848, 856 (1951); *see also Barnes v. Wells*, 165 N.C. App. 575, 579–80, 599 S.E.2d 585, 588–89 (2004) (citing various actions that the Court of Appeals has found to constitute a general appearance including submitting financial documents, appearing at a divorce hearing, moving for change of venue, counsel's participation in an in-chambers conference, and moving to disqualify counsel). The general appearance waiver of personal jurisdiction found in Section 1-75.7 is particular to Rule 12 jurisdictional motions. *Simms*, 285 N.C. at 157, 203 S.E.2d at 777 (explaining that Rule 12 and Section 1-75.7 must be construed together since they are part of the same enactment; and that after a defendant has made a general appearance, he may not assert the defense that the court has no jurisdiction over his person under Rule 12); *Swenson v. Thibaut*, 39

---

[3] The *Simms* Court held that a request for extension of time constituted a general appearance. That holding has been superseded by statute.

[4] However, "obtaining an extension of time within which to answer or otherwise plead" is not a general appearance. N.C. Gen. Stat. § 1-75.7(1).

N.C. App. 77, 89, 250 S.E.2d 279, 288 (1978) (noting that absent Section 1-75.7 being construed with Rule 12, a general appearance would not constitute waiver of jurisdictional defenses). *Cf. Sony Ericsson Mobile Commc'ns. USA, Inc. v. Agere Sys., Inc.*, 2007 NCBC 28 ¶¶ 15–17 (N.C. Super. Ct. Aug. 27, 2007), http://www.ncbusinesscourt.net/opinions/2007%20NCBC%2028.pdf (holding that the filing of a Notice of Designation did not constitute waiver of the defense of venue under Rule 12(b)(3)).[5]

{33}   Carnie attempts to support his position that a Notice of Designation is not a general appearance by arguing that the process of designating a case a mandatory complex business case is analogous to the removal process for federal court. (Def. Reply.) The Federal Rules of Civil Procedure have no analog to Section 1-75.7. *Simms*, 285 N.C. at 156–57, 203 S.E.2d at 777 (finding that there is "no counterpart in the federal practice" to Section 1-75.7).

{34}   The federal removal process allows a state civil action to be removed to a federal district court having original jurisdiction. 28 U.S.C. § 1441(a) (LEXIS through Apr. 9, 2008 legislation). Removal of a state action to a federal court is a question of jurisdiction. *See id.* The Business Court is a Superior Court of general jurisdiction. *Sony Ericsson Mobile Commc'ns. USA, Inc.*, 2007 NCBC at ¶ 16. Filing a Notice of Designation is more akin to filing a motion than federal removal: first, the moving party files the motion (Notice of Designation); then, the motion can be objected to within a certain time period (Opposition to Designation); finally, the judge decides the motion (Order on Designation). *See* N.C. Gen. Stat. § 7A-45.4. The party filing the Notice of Designation has invoked the authority of the Court.

{35}   The Court finds that the filing of a Notice of Designation in an action constitutes a general appearance for the purposes of personal jurisdiction. The Court acknowledges that this may not have been readily apparent at the time

---

[5] The Court notes that the Court in *Sony Ericsson* was hearing a motion on improper venue which, unlike the jurisdictional defenses, is not read in conjunction with the general appearance provisions of Section 1-75.7

Carnie filed the Notice of Designation.[6]  For the above reasons, the Court hereby DENIES Defendant Carnie's motions to dismiss for insufficiency of service of process and for lack of jurisdiction over the person.  This Order makes it clear that a Notice of Designation constitutes a general appearance for the purposes of personal jurisdiction unless an objection to personal jurisdiction is contained therein.

B.

RULE 12(b)(6)

1.

LEGAL STANDARD

{36}   The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the pleading against which the motion is directed.  *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970).  In *Branch Banking & Trust Co. v. Lighthouse Financial Corp.*, 2005 NCBC 3 (N.C. Super. Ct. July 13, 2005), http://www.ncbusinesscourt.net/opinions/2005%20NCBC%203.htm, this Court summarized the 12(b)(6) standard as follows:

> When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted."  In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true.  The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.  When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint.  When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint should be dismissed under Rule 12(b)(6).

*Branch Banking & Trust Co.*, 2005 NCBC at ¶ 8 (citations omitted).

---

[6] Because the Court has granted the Rule 12(b)(6) motion to dismiss, there are no statute of limitations issues which would arise if Carnie were served with a new summons and complaint.

{37}    Furthermore, the Court may not consider "extraneous matter" outside the complaint, or else the Rule 12(b)(6) motion will be converted into a Rule 56 motion for summary judgment. *See, e.g.*, *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890–91 (1979). However, the Court may consider documents the moving party attaches to a 12(b)(6) motion which are the subject of the challenged pleading and specifically referred to in that pleading, even though they are presented to the Court by the moving party. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (considering a contract on a 12(b)(6) motion even though the contract was presented by the movant). The Court is not required to accept as true "any conclusions of law or unwarranted deductions of fact." *Id.* at 56, 554 S.E.2d at 844. Thus the Court can reject allegations that are contradicted by the supplementary documents presented to it. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (stating that the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

2.

ANALYSIS

{38}    Carnie's Rule 12(b)(6) motion asks the Court to dismiss Plaintiff's Tenth Cause of Action, Breach of Contract, as to him. The contract Carnie is accused of breaching is the Covenants Against Competition portion of the Employment Agreement between Carnie and Wholesale Forklifts, Inc. which was entered into on February 11, 2002. Plaintiff and Wholesale Fork Lifts, Inc. entered into an Asset Purchase Agreement on June 3, 2004.[7] Carnie was employed by Plaintiff from the date of the Asset Purchase Agreement. Carnie left the employment of Plaintiff in July 2007 and entered into employment with Forklift immediately or shortly thereafter.

---

[7] The Employment Agreement and the Asset Purchase Agreement were considered by the Court. The Employment Agreement was attached to the complaint. The Asset Purchase Agreement was attached by the moving party to the motion.

{39}    The Employment Agreement is governed by the laws of South Carolina. (Employment Agreement ¶ 9.)  North Carolina will give effect to a contractual provision agreeing to a different jurisdiction's substantive law.  *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980).  However, North Carolina will not give effect to a choice of law provision if the "law of the chosen state would be contrary to a fundamental policy" of North Carolina.  *Cable Tel. Servs. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 643, 574 S.E.2d 31, 34 (2002).  Noncompetition agreements such as the contractual provision at issue here are generally disfavored in both North and South Carolina.  *Compare Rental Unif. Serv., Inc. v. Dudley*, 301 S.E.2d 142 (S.C. 1983), *with United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 (1988).  The requirements for a noncompetition agreement to be enforceable are similar in both North and South Carolina.  *Compare Stringer v. Herron*, 424 S.E.2d 547 (1992),[8] *with United Lab.*, 322 N.C. at 649–50, 370 S.E.2d at 380.[9]   In terms of consideration, both North and South Carolina agree that additional consideration is necessary for a noncompeititon agreement to be enforceable when an at-will employment relationship already exists.  *See Poole v. Incentives Unlimited, Inc.*, 548 S.E.2d 207, 209 (S.C. 2001) (citing with approval North Carolina as an example of requiring additional consideration when the noncompetition agreement is entered into after the initiation of employment).  South Carolina has ruled that contracts can be assigned.  *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 518 S.E.2d 44, 46 (S.C. 1999).  However, it does not appear that South Carolina has directly ruled on the

---

[8] The court held that a "covenant not to compete will be upheld if it is:  (1) necessary for the protection of the legitimate interest of the employer; (2) reasonably limited in its operation with respect to time and place; (3) not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood; (4) reasonable from the standpoint of sound public policy; and (5) supported by a valuable consideration."  *Stringer*, 424 S.E.2d at 548 (citations omitted).
[9] The court held that "restrictive covenants between an employer and employee are valid and enforceable if they are (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory;  and (5) not against public policy."  *United Lab.*, 322 N.C. at 649–50, 370 S.E.2d at 380 (citations omitted).

assignability of noncompetition agreements.[10]   In *Riedman Corp. v. Jarosh*, 345
S.E.2d 732 (S.C. App. 1986), *aff'd* 349 S.E.2d 404 (S.C. 1986), the South Carolina
Court of Appeals did not reach the issue of whether the new employer who bought
the original employer/party to the noncompetition agreement had standing to "seek
any benefits" under the noncompetition agreement.  *Id.*  Unfortunately, the facts in
*Riedman* are sparse and do not give guidance for applying it to the case at bar.
Without guidance from South Carolina courts, this Court turns to North Carolina
law.

{40}   This Court has recently found that a noncompetition agreement that has
been sold as part of an asset sale, as opposed to the sale of a business, gives the
buyer the right to enforce the noncompetition agreement as of the date of the sale
but not to enforce the noncompetition agreement as if it had been entered into
originally by the buyer.  *Better Bus. Forms & Prods., Inc. v. Craver,* 2007 NCBC 34
¶ 33 (N.C. Super. Ct. Nov. 1, 2007)
http://www.ncbusinesscourt.net/opinions/110107%20Order%20Motion%20to%20Dis
miss%20webpage.pdf.  In other words, the buyer of a noncompetition agreement
does not step fully into the shoes of the original employer because the buyer is a
new employer.  Instead, the buyer can either enforce the noncompetition agreement
or enter into a new noncompetition agreement.

{41}   In this case, Plaintiff entered into an Asset Purchase Agreement with
Carnie's original employer, Wholesale Fork Lifts, Inc.  No where in the pleadings is
it asserted that Plaintiff renegotiated the Employment Agreement between
Wholesale Fork Lifts, Inc. and Carnie or entered into a new noncompetition
agreement with Carnie when he began his employment with Plaintiff.  Plaintiff has
the right to enforce the Employment Agreement, including the Covenants Against
Competition provision, from the point of the asset sale on June 3, 2004.  Carnie left
the employment of Plaintiff on or about July 6, 2007, and began his employment

---

[10] The South Carolina Court of Appeal has ruled however that noncompetition agreements are not
marital assets subject to equitable distribution.  *Ellerbe v. Ellerbe*, 473 S.E.2d 881, 886 (S.C. Ct.
App. 1996).

with Forklift immediately or shortly afterwards. The Covenants Against Competition provision of Carnie's Employment Agreement expired two years after his employment with Wholesale Fork Lifts, Inc. was terminated—June 3, 2006. Regardless of whether the Covenants Against Competition provision was enforceable, it has since expired.

{42} This holding, as the holding in the *Craver* case, provides buyers who choose to purchase assets rather than stock with the ability to enforce covenants against employees of the selling company.[11] It also requires the buyer, if it chooses to do so, to negotiate a new restrictive covenant with the employee, the consideration for which would be the new employment. This policy is fair because the buyer may have a business which substantially changes the nature and scope of the restriction originally agreed to by the employee.

{43} For the reasons stated above, the Court hereby GRANTS Defendant Carnie's Motion to Dismiss under Rule 12(b)(6) as it applies to the claims based upon the restrictive covenant in his employment contract. The Court is not dismissing the claims directed to Carnie based upon other alleged violations of his employment contract.

V.

CONCLUSION

{44} Based on the foregoing, it is hereby ORDERED, ADJUDGED, and DECREED:

1. Defendant Carnie's Motion to Dismiss for Insufficiency of Process under 12(b)(4) is DENIED;

2. Defendant Carnie's Motion to Dismiss for Insufficiency of Service of Process under 12(b)(5) is DENIED;

3. Defendant Carnie's Motion to Dismiss for Lack of Jurisdiction Over the Person under 12(b)(2) is DENIED;

---

[11] The Court notes there is a clear difference between an asset purchase and a stock purchase.

4. Defendant Carnie's Motion to Dismiss for Failure to State a Claim under 12(b)(6) is GRANTED as it applies to the claims based upon the restrictive covenant in his employment contract.

This the 1st day of May, 2008.